Good morning, your honors. May it please the court. My name is Jessica Underwood and I'm appearing today on behalf of the Choctaw Nation appellants. With the court's permission, I'd like to reserve three minutes for rebuttal today. There are three questions that are presented by the appellate papers in this case. First is whether the Choctaw Nation waived its sovereign immunity to suit in the District of Arizona, such that the lower court here had subject matter jurisdiction in the first place to consider Caremark's petition to compel arbitration. The second is whether the nation clearly and unequivocally agreed to waive its sovereign immunity in agreeing to arbitrate claims arising out of the provider agreements with the Caremark appellees. And finally, whether the Recovery Act, which forms the basis of the Choctaw Nation's underlying claims here, precludes any agreement to arbitrate for recovery under the statute, and whether that's a question for the court or for the arbitrator in the first instance. So why aren't the last two of your three points already resolved by Chickasaw Nation? Well, Judge Bress, you anticipated what I was going to say next, which is I do recognize that there is a prior opinion from a panel of this court that does squarely address those last two issues. And so while the Choctaw Nation respectfully maintains that, you know, that prior decision, in the Chickasaw v. Caremark case was wrongly decided, I don't want to waste the court's time today. I recognize that under this court's rules, a panel of this court will not overrule a prior panel without any kind of intervening Supreme Court authority. And I cannot point the court to any kind of intervening law. So my intent today is to spend my time on the first issue, which was squarely reserved by Judge Friedland in the Chickasaw case in footnote 11. So before we move on, and it may be that you were not the person who wrote the briefs, I haven't checked the name, but why did you not acknowledge that in your brief? I mean, and in their answering brief, Caremark pointed out that these issues were identical to those litigated in the previous litigation and had been resolved. And in your reply brief, you didn't respond to that. So the period coming in here today that it was your intention to ask this court to relitigate issues that have already been resolved, with no acknowledgement in your briefing that this has actually occurred, did not seek rehearing or rehearing on Bonk in the earlier case. And so I was trying to figure out what you guys were doing. Seems perhaps you were trying to find a way to get another bite at the apple and get another chance to have the previous case, in essence, reheard on Bonk. Well, Your Honor, certainly I think if this panel were open to reconsidering the issues that were addressed by the prior panel. We are bound by the prior panel decision, which makes your approach in the briefing just inexplicable and very questionable. Well, I do not think that the approach in the briefing was intended to hide the fact that the Chickasaw opinion exists. And in fact, the briefs discussed the Chickasaw opinion at length. I think the intent of the prior briefing was to preserve all issues for appeal, including beyond this court, if the client decides to continue pursuing those issues, and that by not raising those issues in the briefing might be deemed to have waived any issues. There are ways to do that, where you do exactly what you just said. You raise the issue, you recognize that it's been resolved, and this panel is bound by the prior decision, and then note that you're just preserving it for any future appeal, which is not what you did here. So I think we can move on, and you probably don't want to waste any of your time talking about those issues, because they are controlled by the Chickasaw Nation case. But you should be aware that that was not an appropriate way to present the case in the briefs. I understand, Your Honor, and I do not intend to waste this court's time addressing those issues this morning. Turning to the first issue that was squarely left open by Judge Freeland in the Chickasaw opinion, whether the Choctaw Nation waived its sovereign immunity, such that the District of Arizona, in this case, had subject matter jurisdiction to consider the petition to compel arbitration. You know, I think it's helpful in thinking about this issue to begin from first principles of sovereign immunity. We know from the Kiowa case that a federally recognized tribe has sovereign immunity that is largely coextensive to 11th immunity that's granted to the states, and that that immunity encompasses both immunity from liability and immunity from suit. And the second component of that sovereign immunity encompasses both whether you can be sued and also where you can be sued. So how broadly do you interpret the tribe's waiver? Your brief acknowledges, and I believe your complaint actually includes a sentence saying that the tribe recognizes that by bringing these claims, they're waiving sovereign immunity over these claims. How broad is that waiver? The tribe's position is that the waiver is limited to the court in which we've filed those claims. So the Eastern District of Oklahoma certainly has jurisdiction over these Recovery Act claims, and I think the tribe would concede that had Karamark decided to either seek a declaration that the tribe had waived its right to proceed in court and instead had to proceed in arbitration, if that issue had been raised in the first instance in the Eastern District of Oklahoma, that would be a different scenario, but that's not what happened here. Okay, so I want to make sure I understand what you're saying. If Karamark had filed a petition to compel arbitration in the Eastern District of Oklahoma, you agree that the tribe would have waived its immunity for that purpose? For the Eastern District of Oklahoma to answer the question, and this is because the motion to compel arbitration is not a counterclaim, it's not a new claim, it is inextricably intertwined with the merits of your Recovery Act claim. It goes to the resolution of that claim. I agree with that, Judge Beatty, but I think that because we filed the Recovery Act claims in the Eastern District of Oklahoma, that if Karamark's position is that those Recovery Act claims cannot be litigated in the Eastern District of Oklahoma, they must be litigated in arbitration, that question could have squarely been presented to Judge Weyrich in the Eastern District of Oklahoma. And what about the provisions in the provider agreements which incorporate the provider manuals that say that the arbitration must occur in Arizona? So where does that leave Karamark? Do you think that they could move to compel arbitration in the Eastern District of Oklahoma when the agreements state that the arbitration has to occur in Arizona? I'm not suggesting that if Judge Weyrich determined that yes, the Choctaw Nation did waive sovereign immunity and there is a right to arbitration, I think likely what would happen in that case is either Judge Weyrich would... There's some dispute, I think, about whether the Tenth Circuit, under the Tenth Circuit, whether Judge Weyrich has the power to compel arbitration in Arizona. But even if Karamark simply got a declaration from Judge Weyrich that, in fact, the Choctaw Nation had agreed to the arbitration clause found in the provider manuals, then either the Choctaw Nation would be bound by that declaration and would have to initiate their claims in arbitration in Arizona, or I think Judge Weyrich could transfer the case to the District of Arizona in that case once he's made that determination. But how? If the tribe's waiver of sovereign immunity is only to the Eastern Court in Oklahoma have the authority to transfer to another district, you're saying the tribe didn't waive immunity here in the District of Arizona. Karamark's argument for why the tribe waived immunity here is because we did agree to this arbitration provision. And the tribe's position is that that's putting the cart before the horse. Essentially, Karamark's argument is you've waived sovereign immunity for the District of Arizona to determine whether or not you agreed to this arbitration clause by agreeing to this arbitration clause. And the tribe's position is you first have to interrogate whether before a court can determine that the Choctaw Nation did agree to the arbitration clause, you have to determine whether the court has jurisdiction in the first place. But didn't the Chickasaw Nation opinion say the exact opposite? That you'd be putting the cart before the horse if you wanted to evaluate each claim of sovereign immunity before determining whether the claim was arbitrable? Well, the Chickasaw Nation panel opinion held, in my opinion, is that it's not the case in every instance that a waiver or that an agreement to arbitrate is a waiver of sovereign immunity. Sure. And I read that the panel was recognizing that a number of different claims could arise in the arbitration that may or may not have been for which immunity may or may not have been waived. But it seemed that the panel was concluding, as you have earlier, that the Chickasaw Nation in that case had waived its sovereign immunity for the arbitration. They entered an arbitration agreement, which means that the court could compel arbitration. I agree that that is what the panel held in the Chickasaw case. But I do not think that the panel was answering the question that I think is before that question. The whole distinction comes down to they had to move to compel arbitration in the Eastern District of Oklahoma. They couldn't do it in the District of Arizona, even though that's what the arbitration provision states. And even though, as you've acknowledged, there's this Tenth Circuit authority that the District Court couldn't compel arbitration because the arbitration was to occur here, the District Court in Oklahoma, because it was to occur in Arizona. Let me be clear first. Under this circuit's precedent, under the Ninth Circuit's precedent, it would be appropriate for Karamark to compel arbitration. Sure, but how does that help Karamark if they're filing a motion to compel arbitration in a District Court that's within the Tenth Circuit? And that's why I'm suggesting that perhaps a petition to compel arbitration under Section 4 is not the filing that Karamark would have made in front of the Eastern District of Oklahoma if they were concerned about this issue. I think that Judge Weirich could have also issued a declaratory judgment, a declaration saying, yes, Karamark has waived, has agreed to the arbitration clause, and the arbitration has to proceed in Arizona. And then if... Could they still do that now? If we agreed with you and said, fine, we'll go through these procedural hoops and vacate the District Court's order, I understand the proceedings in the Eastern District of Oklahoma have been stayed, so then you go back to Oklahoma and Karamark makes their motion there. I think that's exactly what happens here, Your Honor. And that may seem like we're form over function and I'm asking this Court to require Karamark to jump through hoops, that in all practicality, we may end up in exactly the same position. So if we stay this appeal and they then move to compel arbitration in Oklahoma and that judge wants to transfer it to Arizona, would you oppose that? If that judge makes it a determination that the Choctaw Nation did, in fact, enter into the arbitration clause. So that judge answers the formation question that I think this Court really has not answered. The formation question, I mean, there's clearly an arbitration provision in this contract, which everybody's been following for a long time. So the argument is that the people who signed this didn't have authority to enter the arbitration clause? That is part of the argument, yes. So they had authority to enter the contract under which there have been millions of claims and tens if not hundreds of millions of dollars of reimbursement, but they didn't have authority to enter the part of the contract that had an arbitration provision. That's correct, Your Honor. There is a difference between binding a sovereign nation to certain contractual obligations versus binding a sovereign to waive its sovereign immunity, and that's recognized in other contracts as well. Not just any official can waive the United States sovereign. Are you going to discourage the funds? I mean, if the contract's not valid, are you returning the money to Caremark? We're not taking the position that the contract is not valid. We're taking the position that these officials didn't have the authority to bind, to waive the Choctaw Nation's sovereign immunity and bind them to arbitration. What cases have you provided for that assertion? What cases have we provided for the assertion? What authority or evidence have you provided that would support this? I think the evidence that's in the record is the declaration from the Choctaw Nation's legal counsel, which is on, I believe, the record. So that counsel, that strikes me as so self-serving and, frankly, useless, because that would mean any litigant could come into court, have their legal counsel provide a declaration on a legal issue and say, okay, that's it. That's evidence that establishes it. So the Choctaw Nation's legal counsel says they didn't have authority. Isn't that a legal conclusion? I mean, how did they have the right to tell the court that's what happened? It seems you need something else. I don't know that it is a legal conclusion. It may be a legal conclusion under Choctaw law. It may be a factual question about whether these individuals were granted authority by the tribal counsel. But the fact that the declaration may be self-serving, declarations are often self-serving. Yes, but it's going, in my view, goes to, at best, a mixed question, a fact of law. But what seems to be a legal question, you're using it to establish your legal argument that there was no waiver of sovereign immunity, that they didn't have authority. And the question here is, who should be allowed to determine the jurisdiction? Or is it a court to which the Choctaw Nation has submitted to jurisdiction? And the court to which the Choctaw Nation believes it has not submitted to jurisdiction, its only claim to jurisdiction, is the enforceability of the arbitration agreement that we're contesting. And so, again, the Choctaw Nation's position is that the logic is circular here. And that in this scenario where we're asking, do we err on the side of protecting the tribal nation's sovereign immunity? Or do we err on the side of allowing Karamark to proceed in arbitration? The answer has to be that we construe waivers of sovereign immunity. I think that the Chickasaw Nation resolved that issue and said, we don't have to decide sovereign immunity. The nation is bound by the arbitration agreement. The Chickasaw Nation case did hold that, but they weren't answering the question of whether the district court had subject matter jurisdiction in the first place. And that's what we're asking this court to look at, is what is the basis for the district court of Arizona's jurisdiction to even be hearing this petition to compel arbitration? Let me ask you this. So your position is they had to do this in Oklahoma. Do you think that before the district court in Oklahoma could transfer the case to Arizona, that district court would have to answer this contract formation question? I think for the Arizona district court to have subject matter jurisdiction, yes. So why? Because if you file suit in a federal court, you're subject to the rules of the federal court. And one of those is that you can have transfer of venue. So why is it necessary for the Oklahoma judge to decide this question before transferring it to Arizona if that's what he decided to do? Well, your honor, I disagree with the premise that when you waive sovereign immunity in one federal district court, you necessarily waive sovereign immunity in all federal district courts. Do you have any authority for that? It seems like the sovereign here is the federal government. And so the question is, can the nation be hauled into the courts of the sovereign, which is the federal government? Why does it make any difference where the particular venue is? Well, your honor, I think there is authority for treating different federal courts differently. For example, this court held in the McGuire v. United States case that the Tucker Act, under which the federal government has waived sovereign immunity, that that waiver is limited only to the Court of Federal Claims. And so you can bring a claim under the Tucker Act in the Court of Federal Claims if it's over a $10,000 amount in controversy. You cannot bring that same claim in the Southern District of California. And so that federal court, subject matter jurisdiction, and the waiver of sovereign immunity is different than another district court's waiver of sovereign immunity. But let's imagine that your client had not sued Caremark, and that Caremark had wanted to initiate arbitration, and your client said no. Could Caremark sue your client in a federal court to compel arbitration? I don't believe so, your honor. I think that in that scenario, probably Caremark's recourse is, if there's a dispute over whether or not the Choctaw Nation actually signed the arbitration agreement, like there is here, and this distinguishes this case from, for example, the CNL case. But I think in that scenario, where the Choctaw Nation is not the plaintiff, they have not already waived jurisdiction, or waived sovereign immunity in a federal jurisdiction, then perhaps Caremark's recourse is to seek relief in a tribal court. And I recognize that sometimes the outcome of enforcing sovereign immunity can seem unfair. You know, when we have to tell a client, yes, I understand that you think the state of Texas has breached a contract, but your only recourse is to file this claim in an administrative proceeding that is managed by administrative law judges in the state of Texas, that feels unfair to the client, but that is the result sometimes of enforcing sovereign immunity strictly, which is what the Supreme Court guidance has told us to do. I mean, even in Keough, where the Supreme Court recognized that sometimes the outcome of enforcing sovereign immunity can feel unfair, but it is important to protect it. And this court has, this court and the Supreme Court thus far, have resisted the temptation to pull that sovereign immunity back. I see that I've run over time already. So I don't, if you all have further questions, I'm happy to stay up here, but I don't want to abuse the privilege. All right. Thank you. Thank you, and may it please the Court. Sarah Harris for the Caremark Appellees. Under this court's Chickasaw decision, plaintiffs clearly agreed to arbitration in Arizona under the FAA. The only open question at this point is whether sovereign immunity bars the Federal District Court in Arizona from enforcing plaintiff's agreement to arbitrate under the FAA. For three reasons, the District of Arizona does have jurisdiction. First, plaintiffs waived their immunity in federal court by filing a complaint in the District of Oklahoma, because waiving immunity in one federal court waives as to all. And indeed, at this point, I take plaintiffs to be conceding that there's no issue, sort of a no counterclaim example left, that compelling arbitration in the Eastern District of Oklahoma would be just fine. The only objection is to which particular federal court can exercise jurisdiction. Second, plaintiffs also waived their immunity by agreeing to a contract that requires arbitration in Arizona and that consents to federal court jurisdiction to enforce arbitral warrants. And third, as some of this court's questions suggest, one might wonder whether sovereign immunity is implicated at all by an order under Section 4 of the Federal Arbitration Act telling plaintiffs to bring claims in arbitration, because those motions are similar to motions to transfer venue or move to federal court. They're procedural motions that seems like one could say do not implicate sovereign immunity, and I took it that was the case as they actually cited in the reply brief. So why didn't your client move to compel arbitration in Oklahoma? Because under 10th Circuit precedent, as this court recognized in Footnote 5, the Chickasaw decision, we are precluded from doing so because that court interprets Section 4 of the Federal Arbitration Act, like most other circuits other than this one, to say if your arbitration agreement provides for arbitration in the state of Arizona, that is the only venue that can compel arbitration. Could you have filed it there and asked that court to transfer it just as a matter of 10th Circuit law? I don't believe so. What did actually happen though, to be very clear, is that it's not just sort of a district judge in the Eastern District of Oklahoma entering a stay. The stay is under Section 3 of the Federal Arbitration Act. So what happened is Judge Weirich said, I saw this court's Chickasaw decision and I'm adopting its reasoning. There is, in fact, in to arbitration. And that's why Judge Weirich's opinion on this says, I'm staying in under Section 3 because I'm persuaded by the Chickasaw decision. There is clearly an agreement to arbitrate here. So procedurally, we're sort of in a bind because the court in the Eastern District of Oklahoma has said, there's definitely an agreement to arbitrate and said, I'm not allowing any further proceedings in a federal court there, go off and arbitrate. But we can't seek a motion to compel arbitration there under 10th Circuit precedent, given the nature of Section 4. Well, at the point that the district judge in Oklahoma entered the stay order, could Caremark have moved to transfer venue to Arizona? I don't believe so. We haven't tried to do so. And the reason we're trying to do this again would be that the Section 4 motion is giving us the ability to make sure that the plaintiffs can't go around and pick other federal courts in which to conceivably bring additional complaints and then have to constantly litigate the stay motions. I actually don't know if there could be a motion to transfer, but the procedure that at least the 10th Circuit seems to have prescribed in its Ansari decision is that you actually just have to go to the proper district. And I think this underscores two things. One is that the stakes of the subject matter jurisdiction question in this case are sort of a little artificial. There's not going to be litigation in a federal court no matter what. And two, that this would be a very bad vehicle for explaining a concept of sovereign immunity to sort of somehow encompass the idea that the federal government is a divisible sovereign, such that there is a separate injury to your sovereign immunity from having a case litigated in one federal district court as opposed to a different federal district court. The United States is obviously one sovereign, and the concept of sovereign immunity means when you are one sovereign and you consent to being, you know, hailed before the courts of another sovereign or here litigating in the courts of another sovereign, any potential indignity there is just the other sovereign exercising power over you in some way. They can't sort of say that that injury is different in kind in the Eastern District of Oklahoma versus Arizona. That's just never been a concept that has applied to the notion of one sovereign in another sovereign's courts. Now, the other side did mention the Tuckeride cases. I want to briefly discuss those because I think they are very easily distinguishable based on their own citations for two reasons. One is that their primary authority comes from Justice Kennedy's dissent in the West case, and if you look at the West dissent, I think it makes the point nicely. The reason why the United States is conceptually allowed to not only prescribe where it can waive immunity and specify the court, but also set the, quote, practices and procedures that will pertain in that court is that those types of waivers, which only Congress can do, are uniting Congress's power to waive federal sovereign immunity with Congress's Article I powers to prescribe the jurisdiction of federal courts and set what procedures would happen there. So, to put it differently, if you bought the idea that this case was just like the sort of Tuckeride context, you'd have the anomalous view that states or tribes, as a condition of waiving immunity in federal courts, could not only pick their district judge in a particular federal district who would hear the claim, but then dictate the procedures and practices that would apply in that federal court. That, I think, illustrates why that line of cases is different. And then, second of all, the Tucker Act is, I think, of limited value yet further because, even as applied to that context, there is a circuit split on the question of whether even the United States' waiver in the Court of Federal Claims bars claims in other federal courts with jurisdiction over claims against the government. This Court has said the waiver is only in the Court of Federal Claims, but as the McGuire Michigan Supreme Court's dissent that they cite and apply notes, the federal circuit, the court that actually hears direct appeals from the Court of Federal Claims, has said the opposite. So, I think that's just all reason to think it's limited value. Under Ninth Circuit law, could you have, setting aside the Sovereign Immunity point for a moment, could you have moved to compel arbitration, say, in Los Angeles? Moved to compel arbitration in Los Angeles? In a Los Angeles? No, in Scottsdale arbitration. In other words, from a venue standpoint. Yes, under Ninth Circuit precedent, this Court treats Section 4 as permissive, and if there were some other place with venue, I think you'd have to actually ask about the underlying, the venue under the underlying claim under the federal venue statute. But, yes, I think this Court would have allowed that. Again, as this Court's Chickasaw decision in Footnote 5 highlighted, though, there is a difference in what federal courts allow. And again, I think this just illustrates, at the end of the day, the agreement here clearly agrees to arbitration under the Federal Arbitration Act. That is a set of procedures for enforcing an agreement to arbitrate, which we have here. And it seems very anomalous that having a shoulder and made that agreement very clearly, and trying to sort of, that there would be some ability to sort of, like, pick and choose which this agreement also clearly says, there will be arbitration in Arizona, and it will be pursuant to the Federal Arbitration Act. And on top of that, there is agreement to the idea that a federal district court with federal courts with jurisdiction can then enforce the award at the back end, which it would be an even more serious sort of concession beyond what we're talking about here, because that would be allowing a federal court to adopt the arbitral award as if it's, like, a judgment of a federal court. So, I mean, obviously, here there is affirmative litigation by the tribe. So that, this case has that feature. But you can imagine a case in which there were no affirmative litigation. Your client wanted to enforce the arbitration provision. And I take it your position is the arbitration clause itself is a waiver of sovereign immunity as to an affirmative motion to compel arbitration, and at least in the venue where the arbitration is supposed to take place. Yes. So, I think we have two arguments there. One is the argument you identified, which is there is a binding agreement to arbitration in Arizona, plus all other features we discussed. And then, second of all, as a backdrop, again, some of the questions, I think, have illustrated about the motions to transfer venue, that it's not even clear you have to consider a motion to compel arbitration as something that implicates sovereign immunity at all. Okay. So, just focusing on the first part, parking second, the tribe here says, well, the people who signed the agreement didn't have authority to waive the sovereign immunity. Is that a contract formation issue that has to be addressed by a court, or is that an arbitrable issue? That, under this court's Chickasaw decision, we think is clearly an arbitral issue. And one way of knowing that is that the exact same argument was made in the Chickasaw briefing, and the court seemed to treat that as something that would go to the arbitrators to the extent there's an objection. And so, I think the same would follow here with respect to the authority, because, again, there is clearly an agreement to arbitrate here. Whatever the contours or implications of different claims for sovereign immunity, this court said in Chickasaw, it will be up for the arbitrators to resolve. So, did the Choctaw Nation argue before the district court in Oklahoma that the case should not be stayed, there is not an arbitration agreement, because the individuals who signed the provider agreement did not have authority to waive the tribe's sovereign immunity? I am not sure. I do know that the district court looked in its own, sort of, on its own as to whether it thought there was an arbitration agreement and thought that this court's reasoning in Chickasaw was persuasive. And I don't know that even if that argument, I don't think that that argument would have made, I mean, to the extent that the court was saying Chickasaw was persuasive, I think it includes the notion that any questions with respect to who had authority to sign would be for the arbitrators. And just to also address the at ER 24 and 25, I would hesitate to credit that. I think that is a series of legal assertions. And on top of that, as our briefing underscored, if you look at the source of positive law for the Choctaw Nation, the Choctaw Constitution, it is markedly unlike other tribes' constitutions in which there have been expressed reservations of who has the authority to waive the tribe's The Choctaw Constitution has none of that. And Article 9, indeed, gives to the Tribal Council very specific powers and says the Tribal Council has to sign off on, for instance, transactions involving tribal land. But there is no similar limitation with respect to tribal immunity. And so to the extent there is any sort of source of Choctaw law that's been explicated in detail in this case, that is the source. And there's nothing in it that is restricting waivers of immunity or saying that somehow people who apparently have the authority to bind the tribe in contracts to the tune of over $90 million in reimbursement do not also have the authority to waive the tribe's immunity and sign arbitration agreements. Is there a reason your client moved to compel arbitration as opposed to just move to dismiss the Oklahoma case? Well, one reason would be that, again, in order to have the matter referred to arbitration, the procedure is under the FDA. Traditionally, what you do is not sort of just seeking to dismiss. It is having the matter actually referred by the federal court and compelled. And the reason for that is otherwise you can have almost like a whack-a-mole situation if people, if plaintiffs then chose to pursue in other federal district courts and said, this form is also convenient to me. I'm filing another complaint to litigate it. And we would have to go around everywhere saying, no, no, this is actually referable to arbitration. And that's one of the problems the Federal Arbitration Act agreed to solve. That's why people tend to agree to it and try to incorporate it in arbitration agreements. And so just to conclude, again, there's just one issue that seems remotely left open in this case. That is the question of whether the District of Arizona had jurisdiction. There appear to be multiple routes to holding that that court emphatically does have jurisdiction to compel arbitration in this case. And we would ask that the court thus affirm the district court's decision. Thank you. All right. So, Ms. Underwood, you had requested to reserve three minutes. I think you went probably three minutes over, but I will give you two minutes. I want to first address the point that Karamark's counsel made that suggested it would be anathema to hold that a sovereign can agree to jurisdiction in one federal court, but not another. And I don't think that's unusual at all. In fact, we allow even non-sovereigns to do that as a matter of, as a rule, forum selection clauses are enforced more often than not. And that allows private parties to decide I'm going to litigate in this federal forum and not this other federal forum. And so this notion that it would be so bizarre to allow a sovereign to say, no, I only want to litigate in this one federal forum, I don't think is that bizarre under our system. Well, I guess the narrow question is, you know, once you've initiated litigation in Oklahoma and there's a 10th Circuit precedent saying they can't move to compel arbitration in a district where the arbitration is not supposed to be held, did you effectively waive sovereign immunity as to the most logical jurisdiction where that motion to compel would be filed? I don't believe so, Your Honor, but I think that's a question for the Eastern District of Oklahoma in the first instance where we have waived sovereign immunity rather than a question for the District of Arizona where we have not waived sovereign immunity. And stepping back, I think it's helpful maybe to put in context the situation that the Choctaws are faced with here. We have a federal statute that allows us to receive reimbursement from these private insurers. The only way the private insurers will let us submit our claims to them is by agreeing to this provider manual agreement. And that provider manual has an arbitration clause in it, which maybe we agreed to, maybe we did not. And by the way, the tribunal that will decide whether the Choctaw Nation did in fact agree to arbitrate is a forum across the country that the Choctaw Nation believes it hasn't consented to. And so the Choctaw Nation's dilemma is, do we thereby waive sovereign immunity in the District of Arizona, or do we just waive the right to receive reimbursement under the statute at all? And I see I'm out of time, may I just briefly conclude? So I have a question for you. So I was trying to parse through the relationships here and your statements in your brief and in your complaint that this is not based on any contractor not based on any contract. It's a Recovery Act claim. It's a statutory claim. But it didn't seem to me that Caremark was the insurer for the tribal members. So the tribal members can go to tribes pharmacy and receive medications free of charge. But the tribe then has the statutory right to go to the insurer and demand reimbursement. But it seems your option here would be to go to each of the insurers. You don't have to agree to the management arrangement that the insurers have, you can go to each of them and seek reimbursement if you don't want to go into the provider agreement. And that the tribe chose to do so because it was much easier, more convenient for them. My understanding is that the tribe didn't necessarily choose to do so. But the only way the insurers will pay claims is if you go to the pharmacy benefit managers and the pharmacy benefit managers will only pay claims if you you could bring a claim against the insurers. Caremark is not the insurer, right? So absent an agreement with Caremark, there's no claim against them. You can't just randomly go to any insurance company in the country and say you have to reimburse this. It has to be the insurer of a tribal member. So I don't think you can just throw up your hands and say, oh, no, we were victims and had to sign this provider agreement. When if you really thought that the insurers were wrongfully denied claims for reimbursement, you should have sued them. You could have taken the claim to them at that point rather than sign the provider agreement. I will confess, your honor, we're now outside the scope of my knowledge of the relationship between the parties. But my understanding is that at least based on the evidence in the record and the affidavit from it's in the record from the Choctaw Nation representative, is that the only way that the Choctaw Nation was able to get reimbursed for these claims was to go to the I think something that would be helpful in this case is for this court to provide some guidance on how a tribal nation like the Choctaw Nation is best supposed to preserve its sovereign immunity in a situation like this, where we have a statutory right that is butting up against a private party saying, no, the only way you can enforce that right is by agreeing to what we've demanded. Thank you. Thank you. All right. This case is submitted and counsel, thank you for your arguments.
judges: IKUTA, BADE, BRESS